```
         IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF ARKANSAS
                  HOT SPRINGS DIVISION
```

ECONOMY PREMIER ASSURANCE COMPANY                              PLAINTIFF

v.                          Case No. 08-6064

MONTE M. EVERHART                                              DEFENDANT

## Memorandum Opinion

On June 23, 2008, Economy Premier Assurance Company ("EPAC") filed a complaint seeking declaratory judgment that as a matter of Arkansas law, Monte Everhart is not entitled to underinsured-motorist coverage under the Personal Umbrella Liability Policy endorsement to his EPAC insurance policy. (Doc. 1). In response, Everhart filed a counterclaim praying for declaration that underinsured-motorist coverage is available. (Doc. 3). Currently before the Court are cross-motions for summary judgment filed by EPAC and Everhart. (Docs. 8 & 13). These motions raise an issue of first impression in Arkansas: whether Arkansas Code Annotated section 23-89-209, the underinsured-motorist statute, requires an insurance carrier to make underinsured-motorist coverage available in conjunction with an umbrella insurance policy. For the reasons set forth herein, we conclude that the Arkansas Supreme Court would find that no such requirement exists. Accordingly, EPAC's motion for summary judgment (doc. 8) is **GRANTED,** and Everhart's motion is **DENIED**. (Doc. 13).

**I. Background**

In determining whether summary judgment is appropriate, a

court must view the facts and inferences from those facts in the light most favorable to the nonmoving party. *Rabushka v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997). The facts in the present case are not disputed, and they are as follows:

On February 18, 2007, Monte Everhart was involved in a motorcycle accident while riding his 2001 Harley Davidson in Hot Springs, Arkansas. The accident was caused by the negligent driving of Christine Smith, who was operating a vehicle owned by Pat Daulong. As a result of the accident, Everhart suffered personal injury.

Daulong's vehicle was insured by Southern Farm Bureau Casualty Insurance Company ("Farm Bureau"). The policy had a liability limit of $50,000, which Farm Bureau paid. Everhart's motorcycle was insured through EMC Insurance Companies ("EMC"). The policy provided underinsured-motorist coverage in the amount of $100,000. EMC paid Everhart the policy limit. Recovery of the policy limits under both the Farm Bureau and EMC policies did not compensate Everhart for his total damages.

As a result, Everhart made demand on Economy Premier Assurance Company ("EPAC") for $300,000. Prior to the motorcycle accident, Everhart purchased a PAK II insurance policy, number 125363318-0, from EPAC. This policy did not provide coverage for Everhart's motorcycle. At Everhart's request, EPAC added a Personal Umbrella Liability Policy ("PULP") endorsement to the PAK II policy.

Everhart's 2001 Harley Davidson is a covered vehicle for the purposes of the PULP endorsement. When it issued the PULP endorsement, EPAC did not offer underinsured-motorist coverage to Everhart.

Under the express terms of the endorsement, certain types of claims are not covered. It states:

"Types of Claims Not Covered By This Endorsement"

. . . .

> 2. We won't cover losses involving automobile no-fault insurance claims or uninsured or underinsured motorists losses or claims.

Based on this provision, EPAC denied Everhart's claim for coverage.

## II. Standard

The party moving for summary judgment bears the burden of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party shows that there are no material issues of fact in dispute, the burden shifts to the nonmoving party to set forth facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Uhl v. Swanstrom*, 79 F.3d 751, 754 (8th Cir. 1996). Accordingly, because there are no issues of material fact in dispute, disposition by

summary judgment is appropriate in this case.

### III.  Analysis

It is axiomatic that the language in an insurance policy is to be construed in its "plain, ordinary, popular sense." *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 363, 16 S.W.3d 242, 244 (2000). By its very terms, the PULP endorsement issued by EPAC to Everhart does not "cover . . . underinsured motorists losses or claims." This point is not contested by the parties. However, the facts that underinsured-motorist coverage is unavailable under the endorsement and that EPAC failed to offer such coverage to Everhart give rise to the present controversy.

EPAC and Everhart contest the proper interpretation and application of the Arkansas underinsured-motorist statute under the undisputed facts of this case. Section 23-89-209 of the Arkansas Code Annotated states in relevant part:

> Provision for underinsured motorist coverage
>
> No private passenger automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicles in this state shall be delivered or issued in this state or issued as to any private passenger automobile principally garaged in this state unless the insured has the opportunity, which he or she may reject in writing, to purchase underinsured motorist coverage.

Ark. Code Ann. § 23-89-209(a)(1).

The parties dispute whether this provision requires an insurance carrier to make underinsured-motorist coverage available in conjunction with an umbrella insurance policy. EPAC contends

that such policies are simply not "private passenger automobile liability insurance" within the meaning of the statute.  Meanwhile, Everhart contends that an umbrella insurance policy is "private passenger automobile liability insurance," and that as a result, section 23-89-209(a)(1) provides underinsured-motorist coverage by operation of law.  As a federal court sitting in diversity, this Court must construe section 23-89-209 as the Arkansas Supreme Court would if presented with this issue.  *Nabholz Const. Corp. v. St. Paul Fire & Marine Ins. Co.*, 354 F. Supp. 2d 917 (E.D. Ark. 2005).

In construing an Arkansas statute, the cardinal principle of statutory construction is to effectuate the intent of the Arkansas General Assembly.  *Ford v. Keith*, 338 Ark. 487, 494, 996 S.W.2d 20, 24 (1999).  When considering the meaning and effect of statutory language, the court must construe it just as it reads, giving the words their plain and usually accepted meaning.  *Mississippi River Transmission Corp. v. Weiss*, 347 Ark. 543, 550, 65 S.W.3d 867, 872-73 (2002).  If statutory language is unambiguous, the court should effectuate the statutory language without resorting to rules of construction.  *Stephens v. Arkansas School for the Blind*, 341 Ark. 939, 945, 20 S.W.3d 397, 401 (2000).  Where an ambiguity exists, the court may turn to rules of construction and consider the "language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on

the subject." *Fewell v. Pickens*, 346 Ark. 246, 254, 57 S.W.3d 144, 149 (2001). Statutes relating to the same subject matter are said to be *in pari materia* and should be read in a harmonious manner. *Stephens*, 341 Ark. at 946, 20 S.W.3d at 401. Application of these principles in the present case lead to the conclusion that umbrella insurance policies do not constitute "private passenger automobile liability insurance" within the meaning of Arkansas Code Annotated section 23-89-209.

The Arkansas Supreme Court's decision in *Monday v. Canal Ins. Co.*, 348 Ark. 435, 73 S.W.3d 594 (2002) provides the starting point for analysis of the issue presented in the present case. In *Monday*, the Supreme Court addressed the issue of whether Arkansas Code Annotated section 23-89-209 "requires an insurer to offer underinsured-motorist coverage in a commercial automobile liability policy." *Id*. at 438, 73 S.W.3d at 598. In holding that it did not, the Supreme Court addressed the meaning of the words "private passenger automobile liability insurance." *Id*. at 441-42, 73 S.W.3d at 596. It stated that:

> Construing this term just as it reads, giving the words their ordinary and usually accepted meaning in common language, we conclude that the language describes a particular type of automobile liability insurance, namely that issued to individuals or families covering their personal automobiles. The words "private passenger automobile liability" obviously modify the word "insurance." Thus, we agree with the trial court that the focus of the statute is on the type of insurance coverage or policy being issued by the insurer, not on the particular type of vehicle being insured.

*Id*. at 441, 73 S.W.3d at 598. While the distinction between private passenger and commercial automobile liability insurance is not at issue, the Arkansas Supreme Court's analysis provides a starting point. This Court must determine whether an umbrella insurance policy is the type of "private passenger automobile liability insurance" contemplated by the statute. Because the parties do not contest that Everhart's motorcycle is a private passenger vehicle within the meaning of section 23-89-209, the issue becomes whether umbrella insurance is "automobile liability insurance" under the statute.

Arkansas Code Annotated section 23-89-209(b) states that:

> (1) Underinsured motorist coverage as described in this section shall not be available to insureds nor shall insurers be mandated to offer that coverage unless the insured has elected uninsured motorist coverage as provided by § 23-89-403.
>
> (2) Underinsured motorist coverage shall not be issued without uninsured motorist coverage being issued in coordination therewith.

Ark. Code Ann. § 23-89-209(b)(1), (2). Interpreting this provision, the Arkansas Supreme Court stated that:

> [U]ninsured coverage must be offered in conjunction with any type of automobile liability insurance coverage, while underinsured must only be offered with one particular type of automobile liability insurance, namely private-passenger coverage. Thus, we view this provision as requiring only that in those instances where underinsured-motorist coverage must be offered, i.e., when issuing "private passenger automobile liability insurance," and the insured elects uninsured-motorist coverage, the insurer must offer underinsured coverage in coordination therewith.

*Monday*, 348 Ark. at 445, 73 S.W.3d at 600. Accordingly, the threshold which triggers an insurer's obligation to offer underinsured-motorist coverage is the insurer's statutory obligation to offer uninsured-motorist coverage and the insured's acceptance of that uninsured coverage.

Arkansas's uninsured-motorist statute is located at section 23-89-403 of the Arkansas Code Annotated. Section 23-89-209(b)(1) of the underinsured-motorist statute cross-references section 23-89-403. Generally, section 23-89-403 sets out the types of automobile insurance policies for which an insurer has an obligation to make uninsured-motorist coverage available to its insured. Section 23-89-403(a)(3)(B) excludes certain policies. It states that:

> No insurer shall be required to offer, provide, or make available coverage conforming to this section in connection with an excess policy, umbrella policy, or any other policy which does not provide primary motor vehicle insurance for liabilities arising out of the ownership, maintenance, or use of a specifically identified motor vehicle.

Ark. Code Ann. § 23-89-403(a)(3)(B). Under the plain language of this provision, an insurer is not required to offer uninsured-motorist coverage in conjunction with an umbrella policy. Because the obligation to offer uninsured-motorist coverage is a prerequisite to an insurer's obligation to offer underinsured-motorist coverage, an insurer has no obligation to offer underinsured-motorist coverage when issuing an umbrella policy.

This conclusion is confirmed by the manner in which the term "automobile liability insurance" is used in Arkansas Code Annotated section 23-89-403. While the term is not expressly defined, section 23-89-403(a)(1) states that an insurer cannot issue "automobile liability insurance" in the state of Arkansas without making uninsured-motorist coverage available to the insured. Ark. Code Ann. § 23-89-403(a)(1). As stated, this requirement does not apply to an "excess policy, umbrella policy, or any other policy which does not provide primary motor vehicle insurance . . . ." Ark. Code Ann. § 23-89-403(a)(3)(B). This language reflects an intent on the part of the Arkansas General Assembly that the term "automobile liability insurance" be construed to mean primary motor vehicle insurance. Based the principle that statutes of a similar nature should be construed together, "automobile liability insurance" as used in both the uninsured and underinsured-motorist statutes refers to primary motor vehicle insurance.

The Arkansas Supreme Court's decision in *Monday* provided an analytical framework that ultimately required this Court to address whether umbrella insurance is "automobile liability insurance" under section 23-89-209 of the Arkansas Code Annotated. 348 Ark. 435, 73 S.W.3d 594. Based on the cross-reference in section 23-89-209 to section 23-89-403 and the intent of the Arkansas General Assembly, umbrella insurance in not within the ambit of the Arkansas underinsured-motorist statute. As such, an insurer

issuing an umbrella policy has no obligation to offer underinsured-motorist coverage to its insured.

The Court's construction of Arkansas Code Annotated section 23-89-209 is in conformity with the majority of jurisdictions that have addressed this issue. Under the majority approach, automobile liability and umbrella insurance are distinct, and therefore, umbrella insurance is generally not considered automobile liability insurance. The logic for this approach is as follows:

> Automobile liability policies and motor vehicle liability policies insure against the risk of loss through the operation of specific automobiles. An umbrella policy, on the other hand, is fundamentally excess insurance designed to protect against catastrophic loss. Before an umbrella policy is issued, a primary policy (the "underlying policy") must be in existence and this primary policy must by law provide uninsured motorist coverage. The umbrella policy assumes a risk of much less frequent occurrence, i.e., the risk of judgments in excess of primary policy limits, and accordingly carries premiums which reflect the lesser magnitude of this risk. The umbrella policy issued by [the insurer] is an inherently different type of insurance from an automobile or motor vehicle liability policy, and consequently does not come within the scope of the uninsured motorist statute.

*Trinity Universal Ins. Co. v. Metzger*, 360 So.2d 960, 962 (Ala. 1978). *See, e.g., Schmitt v. American Family Mut. Ins. Co.*, 161 F.3d 1115, 1116-17 (7th Cir. 1998) (applying Indiana law); *O'Hanlon v. Hartford Acc. & Indem. Co.*, 639 F.2d 1019, 1027 (3d Cir. 1981) (applying Delaware law); *Mass v. United States Fidelity & Guar. Co.*, 610 A.2d 1185, 1190 (Conn. 1992); *Popham v. State Farm Mut. Ins. Co.*, 634 A.2d 28, 36 (Md. 1993); *United Servs. Auto. Assoc. v.*

*Wilkinson*, 569 A.2d 749, 754 (N.H. 1989); *Kromer v. Reliance Insurance Co.*, 677 A.2d 1224, 1231 (Pa. Super. Ct. 1996); *MacKenzie v. Empire Ins. Cos.*, 782 P.2d 1063, 1065-66 (Wash. 1989).  Thus, it is this Court's determination that if confronted with the issue, the Arkansas Supreme Court would hold that umbrella insurance is not "private passenger automobile liability insurance" within the meaning of Arkansas Code Annotated section 23-89-209.

**IV. Conclusion**

For the foregoing reasons, the Court declares that Monte Everhart is not entitled to underinsured-motorist coverage under the Personal Umbrella Liability Policy endorsement to the PAK II insurance policy issued by Economy Premier Assurance Company ("EPAC").  Accordingly, EPAC's motion for summary judgment (doc. 8) is **GRANTED,** and Everhart's motion is **DENIED**. (Doc. 13).  Both EPAC's complaint and Everhart's counterclaim are DISMISSED WITH PREJUDICE.  Each party is responsible for its own fees and costs.

IT IS SO ORDERED this 25th day of March, 2009.

/s/ *Robert T. Dawson*
Honorable Robert T. Dawson
United States District Judge